FILED
1/9/12 12:09 PM
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| MICHAEL ANTHONY WEISEL and | : | Case No. 06-25304-TPA |
| LORI SUE WEISEL, | : | |
| *Debtors* | : | Chapter 13 |
| | | |
| MICHAEL ANTHONY WEISEL and | : | Related to Doc. No. 124 |
| LORI SUE WEISEL, | : | |
| *Movants* | : | |
| | : | |
| v. | : | |
| | : | |
| ALLEGHENY POWER, et. al., | : | |
| *Respondents* | : | |

*Appearances*:    David A. Colecchia, for Debtors
Richard Bedford, for Ch. 13 Trustee

**MEMORANDUM OPINION**

This is a Chapter 13 case that was filed on October 25, 2006. Presently before the Court for decision is the ***Final Fee Petition for Main Case 06-25304*** ("Fee Application") filed on August 4, 2011 at Doc. No. 124 by Counsel for the Debtors, David Colecchia ("Colecchia").[1] The *Fee Application* indicates that Colecchia has already received payments totaling $2,500 from the Debtors, partly from a pre-petition retainer that they paid him directly, and partly through plan payments made during the course of the case. Colecchia seeks an additional $11,080 in fees and

---

[1] This Court's jurisdiction to decide this matter pursuant to *28 U.S.C. §1334* was not at issue. This is a core proceeding pursuant to *28 U.S.C. §157(b)(2)(A)*.

1

$318.40 in expense reimbursement. The total amount of legal fees being sought is therefore $13,580. The Chapter 13 Trustee filed an *Objection* to the *Fee Application* on the grounds that it was untimely and excessive. See Doc. No. 129.

A preliminary hearing on the *Fee Application* was held on August 31, 2011. The Court then issued an Order requiring the Parties to submit briefs. An evidentiary hearing on the matter was held on November 2, 2011. During the evidentiary hearing, Colecchia testified and made repeated assertions in argument that a written fee agreement actually existed between he and the Debtors even though no document was ever offered into evidence. At the conclusion of the evidentiary hearing the Court indicated that it would take the matter under advisement and issue a ruling.

Two days after the evidentiary hearing, Colecchia filed a *Motion to Withdraw Final Fee Petition for Case 06-25304* ("Motion to Withdraw") at Doc. No. 142. Despite the assertions to the contrary that Colecchia had made at the evidentiary hearing, in the *Motion to Withdraw* he stated that after the conclusion of the evidentiary hearing he searched the Debtors' file but was unable to find any fee agreement between them. As a result, he claimed that he was bound by the *Rule 2016(b) Statement* he previously filed and therefore not entitled to any additional fees beyond what he had already received. The Chapter 13 Trustee filed a timely *Response* opposing the *Motion to Withdraw* at Doc. No 146.

On November 21, 2011, the Court issued an Order, Doc. No. 161, ("November 21st Order"), explaining that it was necessary to hold a hearing on the *Motion to Withdraw* to allow

Colecchia an opportunity to address a number of "concerns" the Court identified in the *November 21st Order* regarding the truthfulness of some of his testimony at the evidentiary hearing. The hearing on the *Motion to Withdraw* was held on December 12, 2011. The next day the Court entered an Order denying the *Motion*. See Doc. No. 165. The reasons for that denial are explained in this *Memorandum Opinion* which represents the Court's findings of fact and conclusions of law as to the *Fee Application*.

### *Denial of the Fee Application*

The *Fee Application* must be substantially denied for a number of reasons, although Colecchia will be permitted to retain the monies he has already received. In making this decision, the Court was not restricted only to a consideration of the items raised by the Chapter 13 Trustee in her *Objection*. In matters such as the present case, the Court is also free to *sua sponte* raise issues as to the appropriateness of the fee being sought. *See, In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 840 *et. seq.* (3d Cir. 1994). In that regard, the Court made its own concerns known to Colecchia both at the November 2, 2011 evidentiary hearing itself and in the *November 21st Order*. Although given an opportunity to address those concerns at the December 12th hearing, Colecchia failed to do so to the Court's satisfaction.

As a starting point for the Court's decision in this regard, all fees related to the appeal taken by the Debtors in the adversary proceeding of *Weisel v. Dominion Peoples Gas Company*, Adv. No. 08-2195 must clearly be removed from any consideration, and in fact, were already stricken by oral order of the Court issued during the evidentiary hearing. The reason for this is

3

derived from the testimony of the Debtor Husband given at the evidentiary hearing to the effect that he initially informed Colecchia that he did not wish to pursue an appeal because of the expense involved. He further testified that he was persuaded to change his mind and agree to the appeal only after Colecchia informed him that the appeal had important legal implications "beyond this case" and would be done at no cost to the Debtors. At the hearing, Colecchia acknowledged that he had indeed made just such a promise to the Debtors, yet inexplicably, he included a substantial amount of time related to the appeal in the *Fee Application*. Colecchia will be held to his promise. Per the Court's review, $5,215 in fees are related to the appeal,[2] thus the amount of additional requested fees is preliminarily reduced to a total of $5,865.

The remaining amount of fees must be denied *in toto* for two alternative reasons, either of which would be sufficient in and of itself to justify the denial. First, as indicated above, Colecchia has admitted, albeit belatedly, that he cannot produce a written fee agreement between he and the Debtors. He is thus in violation of the Court's *Chapter 13 Procedure #3*, which stated in relevant part, and at relevant time, that:

> Counsel shall enter into a written fee agreement, which may provide for future fees in the event of future complications. To the extent those fees exceed $2500 total, the attorney must file a fee application.

*Chapter 3 Procedure #3 at ¶6.* The $2,500 figure referred to in the above quote (a figure that has been periodically changed by the Court over the years[3]) represents the "no look" fee, the maximum amount that Chapter 13 attorneys are permitted to be paid without being subject to the scrutiny of

---

[2]  None of the expenses in the *Fee Application* appear to be related to the appeal.

[3]  Since this case was filed the no-look fee in the Western District was increased to $3,100.

the fee application process. By failing to enter into a written fee agreement with the Debtors, Colecchia has therefore forfeited his right to seek any fees beyond those stated in the *Rule 2016 Statement* he filed along with the petition.[4]

The second reason for a denial of the remaining fees at issue is the misconduct engaged in by Colecchia with respect to the *Fee Application*. That misconduct will be described more fully below in the next section of this *Memorandum Opinion* but for the moment it will suffice to say that it involved dishonest representations made to the Court.

Counsel, of course, has a duty of candor and forthrightness to the Court. When misrepresentations are discovered there must be consequences, and in this instance the Court finds that an appropriate consequence is a denial of the *Fee Application. See, e.g., In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) ( denial of all fees as sanction for attorney nondisclosure was not an abuse of discretion);  *In re Parklex Assocs., Inc.*, 435 B.R. 195, 209-10 (Bankr. S.D.N.Y. 2010) (compensation may be denied when attorney misrepresents facts and deceives the court, citing 3 *Collier on Bankruptcy* ¶329.04[1][b]);  *In re Teknek, L.L.C.*, 394 B.R. 884 (Bankr. N.D. Ill. 2008) (compensation may be denied when attorney misrepresents facts in order to deceive court).

The Court actually considered going beyond  a denial of the *Fee Application* and requiring  Colecchia to disgorge the $2,500 in attorney fee payments he has already received. Such

---

[4] Were this a case of a "lost" fee agreement, the result might be different. However, as noted in the *November 21st Order*, the Debtor Husband initially testified that there was no written fee agreement. He only relented and stated that he had perhaps been wrong about that under sharp questioning by Colecchia, who had also repeatedly asserted at the evidentiary hearing that such an agreement existed. The subsequent acknowledgment by Colecchia in the *Motion to Withdraw* that he cannot produce a fee agreement leaves him with no credibility on the issue. The Court must therefore conclude that the Debtor Husband's initial testimony was correct.

an action would be warranted under the facts of this case. The same authority which permits a bankruptcy court to deny fees due to the misconduct of counsel also allows for the disgorgement of fees already received. *See, e.g., In re Dental Profile, Inc.*, 2011 WL 1299424 (Bankr. N.D. Ill. 2011) (misrepresentation of key facts to court provided grounds for order of disgorgement). However, after giving the matter a good deal of thought, the Court concludes that Colecchia will be permitted to retain those fees previously received.

Given that the Court has found Colecchia to have made dishonest representations, it is a fair question to ask why he should be permitted any fees in this case. Several reasons persuade the Court to take this approach. First, unquestionably, the Debtors in this Chapter 13 proceeding have benefitted to some extent by legitimate services provided by Colecchia. Second, the fees previously received by Colecchia were within the limits of the *2016 Statement*, which the Court is willing to view as a surrogate fee agreement limiting compensation to the then in effect no-look fee. Third, Colecchia performed services and received the fees in question before any of the misrepresentations were made and as far as the Court can discern, none of the misrepresentations related to those fees. Although in these circumstances, the Court would be justified in denying all fees, an argument exists that it might be unnecessarily harsh to require disgorgement of previously paid fees in light of the benefit received and substantial fees already denied. Therefore, the Court will not take that step at this time. For similar reasons, the relatively modest expenses sought in the *Fee Application* will be allowed.[5]

---

[5] The Court's disposition of the *Fee Application* on the grounds indicated renders it unnecessary to consider in any further detail the grounds of timeliness and excessiveness/overlawyering raised by the Chapter 13 Trustee in her *Objection*. The Court will note that the Trustee made good arguments in support of her position on those points.

*Misrepresentations by Counsel*

The relatively straightforward disposition of the *Fee Application* does not end the matter. The Court finds that the misrepresentations that were made to it by Colecchia require a judicial response that goes further than the mere denial of a fee. The question of just what this response should be is a vexing one that the Court would much prefer to avoid but in good conscience cannot do so. Given the sensitive nature of the subject, the Court will first very specifically set forth its findings as to the misrepresentations by Colecchia[6] and then turn to a discussion of the remedy that will be imposed.

The first misrepresentation relates to Colecchia's assertion, under oath at the evidentiary hearing, that he was unable to calculate the amount of fees that had actually been incurred to date at the time he was preparing and submitting an Amended Plan for the Debtors in December 2009. According to the *Fee Application* over $13,000 in fees had actually been incurred by then, but Colecchia submitted a figure of only $4,500 for anticipated legal fees in the then-pending Amended Plan. Colecchia testified that the actual figure could not be determined and listed in the Amended Plan because the employee at his office who handled billing records was "out on maternity leave" at the time. See *Transcript of 11/2/11 hearing at p. 25, l. 22 et. seq*. (hereinafter "*Tr. at __*").

---

[6] Although it perhaps should not be necessary to do so, the Court here briefly notes the sources of the duty imposed on counsel appearing before it to be truthful. That duty may be found in such sources as *Fed.R.Bankr.P. 9011(b)* (representations to the court), *Pa.R. Prof. Cond. 3.3(a)(1)* (lawyer shall not knowingly make a false statement of material fact to the court) and *18 U.S.C. §157(3)* (false representations in bankruptcy proceedings). *See also, e.g., Mon River Towing, Inc. v. Salvage Co.*, 2010 WL 1337693 *33, f.n. 3 (W.D. Pa. 2010).

7

In the *November 21ˢᵗ Order* the Court set forth facts of record indicating that the employee in question did not have a child until May 2010 or later, and thus would not have been out on maternity leave when the Amended Plan was prepared and submitted. The Court also noted that the Debtor Husband had testified that Colecchia gave him a "ballpark figure" of fees incurred to date when the Amended Plan was prepared which total was remarkably close to the actual figure listed in the *Fee Application*. This line of testimony, which was credible, clearly demonstrated to the Court that Colecchia was in fact able to reasonably determine the incurred amount of fees for purposes of insertion in the Amended Plan he filed in December 2009.

Colecchia was thus put on notice going into the December 12, 2011 hearing on the *Motion to Withdraw* that the Court did not believe his assertion about the employee being out on maternity leave thereby allegedly causing him an inability to calculate fees. It would have been an easy matter for him to prove that the assertion was true by presenting the testimony of the employee, or submitting records to show she was out on leave at the time in question. He failed to provide any evidence in that regard and the Court concludes that was because he could not do so since the representation was false.

The second misrepresentation relates to whether Colecchia had entered into a written fee agreement with the Debtors. The details of that misrepresentation are set forth above, and in the *November 21ˢᵗ Order*, and need not be reiterated here. Frankly, the Court is not certain whether Colecchia's repeated assertions at the evidentiary hearing that he had a written fee agreement with the Debtors were deliberate misrepresentations, or merely reckless ones he made "on the fly"

8

without really knowing them to be true or false. Even if the Court gives him the benefit of the doubt and assumes the latter, Colecchia's conduct is still not acceptable. As Comment 3 to *Pa.R.Prof. Cond. 3.3* states in pertinent part:

> ... an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion to be true or believes it to be true on the basis of a reasonably diligent inquiry.

*See also, e.e., In re Taylor*, 635 F.3d 274 (3d Cir. 2011) (to satisfy duty under *Fed.R.Bankr.P. 9011* attorney must make inquiry reasonable under the circumstances; *Rule 9011* does not recognize a "pure heart and empty held defense"). The assertions which Colecchia made about the existence of a fee agreement were absolute, and not accompanied by any qualifiers such as "I think" or "I believe." See *Tr. at p. 47, l. 10-21*, *p. 58, l. 10-11, 17-21; p. 61, l. 25* through *p. 62, l. 2; p. 63, l. 8-13*. The Court was therefore entitled to conclude that Colecchia was speaking after having made a reasonably diligent inquiry, which he clearly had not done. The Court thus views his statements as to the existence of a fee agreement as misrepresentations, whether done intentionally or "only" with reckless indifference to the truth or falsity.

The third area of misrepresentation relates to Colecchia's attempt to be compensated by the Debtors for time spent on the appeal. As noted above, the Debtor Husband testified at the evidentiary hearing that Colecchia represented to him that there was a "novel legal issue" involved and he would pursue an appeal without charge to the Debtors. *Tr. at p. 46, l.16* through *p. 47, l. 6*. Colecchia admitted that he informed the Debtor Husband that he "would take the case up without further fee." *Tr. at p. 62, l. 5*. He also testified under oath that the *Fee Application* "removes most,

9

if not all, of the money related to the appeal." *Tr. at p. 8, l. 17-18.* Despite all that, the *Fee Application* does in fact contain extensive time entries related to the appeal, now stricken, totaling $5,215.

The existence of this billable time in the *Fee Application* in direct contravention of Colecchia's agreement with the Debtors that he would not charge for it, has never been explained away by Colecchia despite his being given an opportunity to do so. The Court does not find it credible that the time was somehow inadvertently, but innocently, included in the *Fee Application*.

In her *Objection* to the *Fee Application*, filed on August 19, 2011 at Doc. No. 129, more than two months prior to the evidentiary hearing, the Trustee expressly pointed out that the *Fee Application* was seeking fees for substantial time related to the appeal. *Id.* at ¶18. The Trustee's attorney also noted the inclusion of appeal-related time at the initial argument on the *Fee Application*, commenting that there would be sufficient funds on hand to pay Colecchia if that time and the time related to briefing in this Court were removed. *Audio of 8/31/11 hearing at 10:47:25, et. seq.* Colecchia thus clearly had notice well before the evidentiary hearing that such time was included, yet he failed to take any action to rectify the matter until he was confronted with the Debtor Husband's testimony at the evidentiary hearing. In fact, but for the testimony of the Debtor Husband at the evidentiary hearing, to the effect that Colecchia had agreed to undertake the appeal without charge, the Court likely would never have known of that circumstance.

In the *November 21st Order*, the Court advised Colecchia of the following:

> Even though the appeal-related fees have been stricken, the Court finds it
> very troubling that they were included in the *Fee Application* in the first
> place when Colecchia admits he had promised his clients they would not be

10

> charged for an appeal. An explanation will be required, and if the contention is that inclusion of the appeal-related fees was merely inadvertent, a further explanation will be required as to why no action was taken to remove them from the *Fee Application* prior to the evidentiary hearing.

*See Doc. No. 161 at p. 6.* Despite once again being given an opportunity to do so, Colecchia has provided no explanation for the inclusion of the appeal-related time in his *Fee Application*, or the failure to seek to remove it until after the Debtor Husband's testimony at the evidentiary hearing. The Court can only conclude that he has no explanation and that the inclusion of the time was a deliberate misrepresentation by him intended to deceive the Court and obtain payment for time for which he knew he was not entitled.

The fourth misrepresentation by Colecchia concerned the reason why he took an appeal to the District Court in the matter of *Weisel v. Dominion Peoples Gas Company*, Adv. No. 08-2195, from this Court's grant of summary judgment to Dominion. Colecchia testified under oath at the evidentiary hearing that there was a "dual objective" in taking the appeal, both to litigate an issue of legal importance under *11 U.S.C. §366* and to get the Debtors' natural gas turned on. *Tr. at p. 19, l. 24 through p. 25, l. 6.* However, the Court pointed out in the *November 21st Order* that the Debtor Husband had confirmed the Court's own understanding that in fact the gas had been turned on very early in the adversary proceeding and thereafter, was never turned off. *Tr. at p. 42, l. 23 through p. 44, l. 6.* That was in accordance with the agreement that had previously been reached between the Parties confirming that the gas would flow and the Debtor would pay any arrears due in installments. At the December 12th hearing on the *Motion to Withdraw* Colecchia had an opportunity to show how, under these circumstances, there could have been a "dual objective"

as he had testified. Again he failed to do so. The Court therefore finds that Colecchia made yet another misrepresentation when he said concern about restoring the Debtors' gas service played part in the decision to take the appeal. The Court finds that the only reason the appeal was taken was in furtherance of Colecchia's own desire to "make new law" on what he considered to be an important legal issue, even though an appeal was senseless from his clients' standpoint.[7]

Having found that Colecchia made numerous misrepresentations to this Court, the question then becomes what to do about it. That question must, of necessity, be addressed in the overall context of the Court's prior experiences with Colecchia.

Were he a "first-time offender," the Court would be inclined to let matters rest with the denial of the fee and a stern warning against any further misconduct. However, Colecchia is decidedly not a first-time offender. A list of cases in which Colecchia has been sanctioned for various reasons in this Court, primarily for failure to comply with Orders in some respect, includes *In re Rosemarie M. Fike,* Case No. 05-32446 (Doc. Nos. 48, 53) (repeated failures to attend court proceedings)*, In re Lee R. Eygabroad and Kristina K. Eygabroad*, Case No. 06-24260 (Doc. No. 191) (repeated failures to comply with scheduling orders), *In re William M. Morrison*, Case No. 06-23520 (Doc. Nos. 38, 77) (repeated failures to comply with court orders through intentional disregard or reckless indifference; finding of willful bad faith), *In re Jeffrey L. Turmo and Sherri L. Turmo*, Case No. 05-25581, *Turmo v. LaSalle Bank*, Adv. No. 06-2394 (Doc. No. 82) (repeated

---

[7] On the appeal the District Court sustained this Court's grant of summary judgment for Dominion, so Colecchia lost the appeal. Nevertheless, in a further indication that the appeal was taken for his own self-aggrandizement rather than out of concern for the protection of his clients' interests, he boasts of that loss as having established the "National Standard" for post-petition termination of utility service. *See Brief in Support of Counsel Fee Application*, Doc. No. 140 at p. 3. The Court does not view Counsel's desire to make a name for himself as a justifiable reason to take an appeal when there is absolutely no client interest to be served in doing so.

failures to comply with court orders constituting willful bad faith), and within the present case itself, *Weisel v. Dominion Peoples Gas Company*, Adv. No. 08-2195 (Doc. No. 72) (repeated failures to comply with court orders constituting willful bad faith). To be fair, most of his prior infractions have generally not involved the sort of blatant dishonesty that was evident here, although in at least one other case he was sanctioned pursuant to *Fed.R.Bankr.P. 9011(c)* for making a misrepresentation. *See, In re Scott G. Critchfield and Tracy M. Critchfield*, Case No. 03-35715, *Critchfield v. Equifirst*, Adv. No. 04-2517 (Doc. No. 192).[8] Additionally, in *In re Chester C. Grabowski and Elaine M. Grabowski*, Case No. 05-35105-TPA (Doc. No. 191), the Court found that Colecchia had made false statements concerning the purported waiver of a Chapter 7 discharge, although he was not sanctioned for that representation.

In addition to the above, Colecchia also has a history with some of the other judges of this Court which is pertinent to the matter at hand. For instance, in *In re Rebecca R. Black*, Case No. 03-21890 (Doc. No. 119), under facts eerily similar to those here, the Hon. Jeffery A. Deller issued an order denying a motion wherein Colecchia was seeking to amend a plan with only a few months left to completion in order to add substantial attorney fees that he had known about for

---

[8] In *Critchfield*, Colecchia filed a motion to extend the discovery deadline and alleged that necessary depositions had not yet been completed due to the difficulty in coordinating them with the schedules of all parties' counsel, thereby clearly implying that he had made efforts to schedule the depositions. The numerous defendants filed responses in which they denied that Colecchia had ever made any attempt to schedule the depositions. At a hearing on the motion to extend, Colecchia made a statement to the Court that the scheduling of depositions was a "Herculean task" given the number of attorneys involved – again clearly implying he had actually attempted to schedule the depositions. The Court issued a rule to show cause against Colecchia directing him to explain these apparent misrepresentations. Colecchia retained counsel to represent him, who responded to the rule to show cause by essentially conceding that misrepresentations had been made but they were "hyperbole" and were not done with the "intent to foster or continue frivolous litigation." The Court ultimately sanctioned Colecchia pursuant to *Fed.R.Bankr.P. 9011(c)*, giving him the benefit of the doubt, finding that while there may have been no intent to mislead, there was no factual basis for the representations at issue.

13

several years. And in the recent case of *In re Lillian P. Iannini*, Case No. 09-22081 (Doc. No. 144), the Hon. Judith K. Fitzgerald substantially reduced a Chapter 13 fee Application filed by Colecchia, finding, *inter alia*, that his efforts to keep the Debtor in possession of her residence "when she had no legal or equitable right to be there was not based on any reasonable basis in law or in fact or any principled argument to change the law."

Balanced against all of these past transgressions of Colecchia are some positive qualities that he possesses, which the Court has observed on occasion. At times he appears to have genuine compassion for his clients and zealously advocates on their behalf. He also appears to take seriously his obligation to stay current on the law and is not reluctant to assert a novel legal position. While the Court obviously does not always agree with the arguments advanced by Colecchia, and while in no event can it countenance the presentation of a novel argument solely as a means of gratifying an attorney's ego (as appears to have been the case in the *Weisel v. Dominion* appeal), in the right case it is refreshing to interact with an attorney who is creative and willing to look at new approaches to a problem rather than just practice "cookie-cutter" law. Colecchia appears to be intelligent and obviously has some legal ability.

Admirable as some of these traits may be, however, they cannot be viewed in a vacuum or excuse a failure to meet basic standards of the legal profession, such as honesty and candor in dealings with the Court. The Court has employed fines, remonstrations, admonitions, and other tactics over the years in an effort to get Colecchia to "see the light" but they have had no demonstrable effect. His latest misconduct is the most serious yet. The Court therefore finds that it must try a new approach.

Colecchia will be required to serve a copy of this *Memorandum Opinion* and related materials on the Disciplinary Board of the Supreme Court of Pennsylvania so that body can determine whether any further sanction should be pursued.

An appropriate Order will follow.

Dated: January 9, 2012

_____
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case administrator to serve:
    Debtors
    David Colecchia, Esq.
    Richard Bedford, Esq.
    United States Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| MICHAEL ANTHONY WEISEL and | : | Case No. 06-25304-TPA |
| LORI SUE WEISEL, | : | |
| *Debtors* | : | Chapter 13 |
| | | |
| MICHAEL ANTHONY WEISEL and | : | Related to Doc. No. 124 |
| LORI SUE WEISEL, | : | |
| *Movants* | : | |
| | : | |
| v. | : | |
| | : | |
| ALLEGHENY POWER, et. al., | : | |
| *Respondents* | : | |

## ORDER

*AND NOW*, this *9th* day of *January, 2012*, for the reasons stated in the accompanying

*Memorandum Opinion*, it is **ORDERED, ADJUDGED and DECREED** that,

(1)    The **Final Fee Petition for Main Case 06-25304** ("Fee Application") filed

on August 4, 2011 at Doc. No. 124 by Counsel for the Debtors, David Colecchia ("Colecchia") is

**GRANTED in part**, in that Colecchia is allowed a reimbursement of expenses in the amount of

$318.40, to be paid from funds being held by the Chapter 13 Trustee but in all other respects the *Fee*

*Application* is **DENIED.**

(2)    ***On or before January 19, 2012,*** Colecchia shall serve a copy of this *Order*,

the accompanying *Memorandum Opinion*, the November 21, 2011 *Order* (Doc. No. 161) and the

1

transcript of the November 2, 2011 evidentiary hearing (Doc. No. 158) on the Disciplinary Board of the Supreme Court of Pennsylvania, and shall file a Certificate of Service to that effect with the Court, including a copy of the cover letter accompanying the submission, within three days of doing so but *no later than January 22, 2012.*

                                                    Thomas P. Agresti, Chief Judge
                                                    United States Bankruptcy Court

Case administrator to serve:
    David Colecchia, Esq.
    Richard Bedford, Esq.
    Debtors
    United States Trustee